CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 20 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **JOHN D. EASTWOOD,** | ) | CASE NO. 7:11CV00310 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | |
| | ) | |
| **SGT. BAKER, ET AL.,** | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

John D. Eastwood, a former Virginia inmate proceeding pro se, filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that while he was incarcerated at Coffeewood Correctional Center (CCC), the defendant prison officials violated his constitutional rights by interfering with his ability to prepare and submit legal materials to courts. Eastwood also applies to proceed in forma pauperis, and that court will grant him that status. The court finds, however, that Eastwood's action must be summarily dismissed without prejudice for failure to state a claim.

I

Eastwood alleges the following events on which he bases his claims. In April 2009, Eastwood tried to mail legal papers to the institutional attorney for review, and mail room officials at CCC delayed the mailing for seven days. On April 30, 2010, Eastwood placed mailings in the mailbox, but they were mailed five days later, and one was returned a week after that for a signature. On June 2, 2010, he mailed another letter to the court, only to get it back five days later, bearing a Post Office "RTS" (return to sender) stamp.

In December 2009, Eastwood asserts that a prison official disabled the law library computer and then informed him that the computer would be "down until further notice." In February 2010, Eastwood was scheduled to use the law library from 8:15 a.m. until 11 a.m. one day, but officials did not open the library until 9:30 a.m.

In March 2010, legal documents saved under Eastwood's "sign on and password" to one of the law library computers disappeared. When he complained, an officer informed him that the data drive had to be replaced. As a result, Eastwood had no access to his legal documents for three weeks. When he could again access the computer files, he discovered that some of his documents were missing, although officials said that all documents had been recovered.

In May 2010, three officers refused to notarize an in forma pauperis application to be submitted to the court, stating that they could not notarize anything that they did not know to be true. Eastwood was not able to submit the application as the court had requested.

In March 2010, when Eastwood asked for copies of legal documents, an officer informed him that only one person was assigned to make photocopies for inmates and only on Fridays, despite a posted memo that said copies would also be made on Wednesdays. Eastwood could not get the copies he needed to mail to the court. Eastwood was scheduled to use the law library on July 2, 2010 and intended to have copies made. Instead, the library was closed all day because of a pre-holiday picnic at noon.

In mid-July 2010, when Eastwood asked permission to print out his 29-page court filing, the officer only allowed him to have 25 pages printed, according to prison policy, and told him he would have to wait until the next printing day to get the rest of his document.

Officials transferred Eastwood on July 15, 2010. He asked officers to arrange for him to receive copies of his legal documents from the CCC law library computer. Some of these

documents needed to be filed with the court by July 26, 2010, according to court order. He did not receive copies of the documents.

After Eastwood arrived at St. Bride's Correctional Center, he found that the law library contained only limited legal materials, one computer, and three typewriters. When Eastwood asked about the reason for his transfer, the answer was: "Administrative Transfer" by CCC.

Eastwood claims that these incidents of official interference in his ability to prepare and mail legal materials to the court "played a role" in the dismissal of his appeal and his § 1983 civil action being dismissed. He seeks a monetary award of $10,000,000 in damages.

## II

The court is required to dismiss any action or claim filed by a prisoner proceeding in forma pauperis if it determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Inmates have a guaranteed right to reasonable access to both state and federal courts. Ex parte Hull, 312 U.S. 456 (1941); Procunier v. Martinez, 416 U.S. 396 (1974). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law" and other materials necessary to meaningful pursuit of litigation. Bounds v. Smith, 430 U.S. 817, 828 (1977).

Where an inmate has had access to court, but alleges denial of specific materials or services related to his preparation of legal pleadings, the inmate must show that denial of the

documents needed to be filed with the court by July 26, 2010, according to court order. He did not receive copies of the documents.

After Eastwood arrived at St. Bride's Correctional Center, he found that the law library contained only limited legal materials, one computer, and three typewriters. When Eastwood asked about the reason for his transfer, the answer was: "Administrative Transfer" by CCC.

Eastwood claims that these incidents of official interference in his ability to prepare and mail legal materials to the court "played a role" in the dismissal of his appeal and his § 1983 civil action being dismissed. He seeks a monetary award of $10,000,000 in damages.

## II

The court is required to dismiss any action or claim filed by a prisoner proceeding in forma pauperis if it determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Inmates have a guaranteed right to reasonable access to both state and federal courts. Ex parte Hull, 312 U.S. 456 (1941); Procunier v. Martinez, 416 U.S. 396 (1974). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law" and other materials necessary to meaningful pursuit of litigation. Bounds v. Smith, 430 U.S. 817, 828 (1977).

Where an inmate has had access to court, but alleges denial of specific materials or services related to his preparation of legal pleadings, the inmate must show that denial of the

item or service resulted in specific harm to his litigation of a nonfrivolous claim. Lewis v. Casey, 518 U.S. 343, 352-53 (1996). The fact that an inmate may not be able to litigate as he wishes once a known claim is brought before the court is not sufficient to demonstrate the actual injury element of an access to courts claim. Id. at 354. Moreover, state officials cannot be held liable under §1983 for negligent actions which interfere with an inmate's litigation efforts. Pink v. Lester, 52 F.3d 73 (4th Cir. 1995) (citing Daniels v. Williams, 474 U.S. 327 (1986)).

Eastwood's allegations are not sufficient to support any plausible claim that defendants' actions deprived him of the right to access the courts. First, he fails to allege facts indicating that any of the alleged deficiencies in the prison law library, notary services, or the prison's computer system caused any specific injury to his ability to prepare and submit court documents for timely filing. He does not demonstrate that the court would have refused to consider a handwritten pleading, and he offers no indication that the issues he sought to research were critical to consideration of any particular meritorious claim in his appeal or civil action. Eastwood's constitutional rights were not violated merely because he was not able to research issues as thoroughly as he would have liked or because he decided to prepare court submissions on the computer and was sometimes hampered in that effort by computer problems.

Second, Eastwood states no facts from which a reasonable fact finder could determine that prison officials delayed his mail, disabled a law library computer, or changed the law library schedule with any specific intent to deprive him of the right to prepare or file a timely appeal or pleading. Mail delays and schedule changes that resulted from officials' negligent or inadvertent actions do not give rise to any constitutional claim of denial of access, even if they adversely affected his litigation efforts to some extent.

Eastwood's complaints about officials' responses to his use of the prison grievance procedure do not give rise to any constitutional claim. Because an inmate does not have a constitutionally protected right to a grievance procedure in the first place, <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994), prison officials' actions under the grievance procedure do not deprive that inmate of any constitutional right.

Most importantly, Eastwood fails to allege facts on which he could demonstrate that any of the defendants' alleged misconduct prevented him from pursuing, or prevailing in, any specific and viable appellate claims or civil rights claims. Therefore, he has not made the necessary showing of harm to his litigation efforts so as to state any claim that the defendants deprived him of his constitutional right to access the courts.

For the reasons stated, the court concludes that Eastwood's allegations as amended are insufficient to state any constitutional claim. Therefore, the court dismisses the complaint without prejudice, pursuant to § 1915(e)(2)(B). An appropriate order will issue this day. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 19th day of July, 2011.

/s/ Glen Conrad
Chief United States District Judge